The Grand Rapids Chair Company (a corporation)
v. Willard B. Lyon.

*Replevin—Demand—Sale—Retention of title as security—Evidence—
Unexecuted written contract.*

1. Replevin will not lie for property purchased by the defendant
with money furnished by the plaintiff under an agreement that
he should own it until paid for, without a prior demand, in
the absence of an agreement for its delivery at a fixed date.

2. An unsigned writing, admitted by the parties to contain a cor-
rect statement of an *oral* agreement entered into by them, is,
competent evidence of such agreement.

Error to Newaygo. (Palmer, J.) Argued January 9,
1889. Decided January 25, 1889.

Replevin. Plaintiff brings error. Affirmed. The facts
are stated in the opinion.

*Butterfield & Keeney,* for appellant, contended:

1. The testimony showed without contradiction that plaintiff's money
was placed in the hands of Gonsolus for a specific purpose,—the
purchase of a team,—under the specific condition that the team
should remain the property of the plaintiff until paid for; in
other words, it was money to which there was attached a trust;
and plaintiff's testimony tended to show that defendant had
notice of such facts, and if he had such notice he could not
hold the property thus acquired with the condition unperformed;
citing Perry, Tr. (3d ed.) §§ 217, 828; *Neely v. Rood,* 54 Mich.
136; *Den v. McKnight,* 11 N. J. Law, 385; *Wormley v. Worm-
ley,* 8 Wheat. 421; *Smith v. Bowen,* 35 N. Y. 83; and no agree-
ment between Gonsolus and Lyon to which plaintiff was not a
party could alter the duty of the defendant to comply with the
condition or restore the property.

2. If Lyon had no notice of the trust, still the plaintiff could recover,
unless it appeared that defendant actually paid for the team, or
has suffered some loss or incurred some obligation, unless he is.
in the position of a *bona fide* purchaser; citing same authori-
ties as above, and also *Cook v. Tullis,* 18 Wall. 332.

3. No demand was necessary. The defendant was wrongfully in the possession of the team, the authority to buy it being given to Gonsolus, who had no right to deliver the money or the property to any other person. The fact that defendant claimed rights as a *bona fide* purchaser gave no right to insist on a demand as a prerequisite to the commencement of suit; citing *Trudo v. Anderson*, 10 Mich. 370; *Ballou v. O'Brien*, 20 Id. 305.

4. The defendant had already refused to give up the team, and asserted to the plaintiff a right of action inconsistent with that of the plaintiff, and, however innocently he may have acquired possession, he is not entitled to a demand after having asserted a hostile title; citing Wells, Repl. § 374.

5. But even if demand was proper to be made, it could only bear on the question of costs; citing Wells, Repl. § 372.

6. In no case is it proper to give a judgment for a defendant for the value of the property, unless the title is found to be in him; citing *Weber v. Henry*, 16 Mich, 399; *Darling v. Tegler*, 30 Id. 56.

*Frank Dumon*, for defendant, contended:

1. The court was right in his instruction as to the necessity for a demand; citing *Sewing-machine Co. v. Bothane*, 70 Mich. 343.

MORSE, J. The plaintiff, a corporation duly organized and existing under the laws of this State, brought replevin against the defendant in the Newaygo circuit court for the possession of a span of horses, one ton of ground feed, two tons of baled hay, and one barrel of flour. Upon the trial the issue seems to have been confined to the ownership and right of possession to the team ; at least, this is the only matter brought before us for review. The defendant had judgment for the value of the property in the court below.

In October, 1887, one John G. Gonsolus contracted to furnish and ship to plaintiff oak logs. Afterwards, and in the same month, Gonsolus contracted with the defendant for the cutting, skidding, hauling, and loading on the cars at Field's Station the saw-logs which Gonsolus had agreed to furnish plaintiff. There were no

contract relations whatever between plaintiff and defendant. October 21, 1887, the plaintiff sent $350 to Gonsolus, inclosed in the following letter:

"GRAND RAPIDS CHAIR COMPANY,
            Manufacturers of Chairs and Furniture.
    "GRAND RAPIDS, MICHIGAN, October 21, 1887.
"J. G. GONSOLUS, Big Rapids, Mich.
    "*Dear Sir:* Your favor of the 20th received. It reaches me just as I am starting on a southern trip to be gone three weeks. Will be up to see you as soon as I return. We inclose check for $350 for the purpose of buying team; the team, of course, must be our property until paid for.       Yours respectfully,
                            "E. H. FOOTE, Sec'y."

Gonsolus testifies that he received this check, indorsed it, and drew the money upon it.    Three hundred dollars of it he paid to the defendant.    At the time he handed the money to him, Lyon asked him what the secretary of the company said in sending him the check.    Gonsolus told him that the check was sent with the understanding, as contained in the letter, that the team should remain the property of the company until paid for.    He stated the contents of the letter to defendant when he gave him the money.    The defendant took the money, and went away; came back a few days after, and reported that he had bought a team.    Gonsolus further testified that he had never paid the chair company for the team, and had never paid back the money so received from plaintiff. Foote, the secretary, also testified that the team had never been paid for, or the money paid back to the company.    He knew the team purchased with the money was in the possession of defendant.    A day or two before this suit was commenced he had a conversation with defendant in the office of the company at Grand Rapids, he having written Lyon that he wished to see him there. Lyon had before this written him that he was behind with

his men, and could not go on with his contract. At this talk Lyon told him that he was $500 behind with his men, and wanted him to make some arrangement to pay them. Foote said he would go up the next morning to pay the men, if Lyon would give up the possession of the team, as he understood from Gonsolus that Lyon had never paid him for the team. Foote swears that he told Lyon that, as he had never paid for the team, it belonged to the company, and should be turned over. This Lyon refused to do, but said that if Foote would come and pay the men he would work with the team, and pay for it.

This was, in substance, the claim of the plaintiff: that Lyon bought the team with the money of the plaintiff, knowing of and assenting to the arrangement in the letter that the team should be the property of the plaintiff until paid for, and that not a cent had ever been paid to the company for the team; and that on demand he refused to turn it over to plaintiff.

Lyon denied any such arrangement, or any knowledge of it. He testified that he made a contract with Mr. Gonsolus, which contract provided, among other things, that Gonsolus was to advance the sum of $250 upon the contract; that he received the $300 as such advancement; that Gonsolus did not state to him the contents of the letter, and no arrangement was made between them that the team should be the property of the company or Gon_ solus until they were paid for. · He was present when Gonsolus received the check, and was informed by him that it was from Mr. Foote, but he did not know the amount of it, and Gonsolus did not tell him the amount, or that he had cashed it, before he paid the money to defendant. Lyon admitted that he told Foote that he was $300 or $400 behind with his men, but denied that Foote ever asked him for the horses, or said that he wanted them; denied that he ever said to Foote that he wanted

to pay the men and keep the horses, and go on and work until he paid for the team; claimed that no demand had ever been made for the horses. He admitted that he had not completed his contract.

Upon this issue the case went to the jury, the circuit judge instructing them, in substance, that if the testimony of Gonsolus was true, that Lyon received the $300 with the understanding between him and Gonsolus that the team purchased with it should belong to the chair company until paid for, and that before commencement of suit a demand or request for the property was made of Lyon to deliver up the team, and he refused, the plaintiff was entitled to a verdict; but that, if they believed no such arrangement was made, and Lyon purchased the property as he testified, that he had no contract relations with the chair company, and that Gonsolus advanced this money with which he bought the team upon the contract between him and Lyon, without any understanding or agreement that the team should remain the property of the chair company until they were paid for, then the defendant was entitled to recover, and it made no difference what the state of accounts was between the chair company and Gonsolus, or between Gonsolus and the defendant; that such matters, in such case, were immaterial and irrelevant to the issue, and not to be considered by the jury.

The charge of the court was correct. If the property was purchased as claimed by plaintiff, and had not been paid for by the defendant, still a demand was necessary before it could be taken from Lyon. It was lawfully in his possession. No time was agreed upon when the team should be delivered to the plaintiff, and the defendant was entitled to an opportunity to pay for the team, or return them, upon request or demand.

Before the plaintiff was entitled to take the team from

the defendant, there must be a refusal to pay for them, or deliver them up, or circumstances equivalent to such refusal.

And if the defendant received the money as an advance on the contract from Gonsolus, with no understanding or agreement that the property purchased with it should belong to any one but the defendant, we fail to discover what difference it would make whether at the time the team was replevied Gonsolus owed defendant or defendant owed Gonsolus upon the contract. What money Gonsolus paid on the contract, without any agreement that the money should follow the property purchased, by ownership in or lien upon by Gonsolus or the chair company, Lyon had a right to use as he saw fit, and would be responsible to Gonsolus only for the amount of the money, to be recovered in the ordinary and usual way. The ordinary relation of debtor and creditor existed between them, with the usual remedies in such cases. This disposes of all the plaintiff's requests to charge, and of all the objections urged against the instructions of the circuit judge to the jury.

When Gonsolus was first examined as a witness he was asked this question:

"At the time the team was bought were you owing the defendant anything?"

This was not allowed to be answered. The question was proper when propounded, and an answer should have been permitted. But the error was harmless. It was not claimed that Gonsolus was owing defendant at this time, and it was admitted, and the jury must have so understood it, that the payment of the $300 was either. made as an advancement on the contract, as claimed by Lyon, or under an understanding or agreement, as claimed by Gonsolus, that it should be used in the purchase of a

team, which was to be the property of plaintiff until paid for. It therefore, in the end, became entirely immaterial whether Gonsolus, at the date of the handing of the money to Lyon, was indebted to him or not outside of the contract. And there was no dispute between Lyon and Gonsolus as to the terms of their contract.

It appears that a written contract was drawn up in accordance with the oral agreement between Lyon and Gonsolus, but that it was never signed by the parties. On the trial this written contract was exhibited to both Gonsolus and Lyon, and each testified that it was a correct statement of their agreement. It was then introduced in evidence against the objection of plaintiff's counsel. There was no error in this. It was not introduced as the contract, but it was competent, on the testimony of both Gonsolus and Lyon, as evidence of what the oral agreement was between them.

The objection that questions relative to the state of the accounts on the contracts between the plaintiff and Gonsolus, and Gonsolus and the defendant, were improperly rejected, has already been disposed of in our remarks upon the charge of the court to the jury. It was not contended by the defendant that he had paid the chair company or Gonsolus for the team, or that if their theory as to the buying of the team was correct, and they had made demand before suit, the plaintiff was not entitled to recover. His defense was that the money was paid to him in such a way, and under such circumstances, that he had a right to buy the team with it, and hold it as his own in any event.

There being no error in the proceedings, the judgment below is affirmed, with costs.

SHERWOOD, C. J., CAMPBELL and LONG, JJ., concurred. CHAMPLIN, J., did not sit.